**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| TRAVIS C. PHILLIPS, | ) | CASE NO. 3:22-CV-01144-JGC |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | CARMEN E. HENDERSON |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant, | ) | |

### I.  Introduction

Travis C. Phillips ("Claimant") seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). This matter is before the Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

### II.  Procedural History

Claimant filed applications for POD and DIB on January 19, 2020, alleging a disability onset date of October 16, 2017. (ECF No. 7, Tr. 22). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, Tr. 22). On March 23, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, Tr. 22). The ALJ issued a written decision finding Claimant was not disabled on April 29, 2021. (ECF No.

1

7, Tr. 19). The ALJ's decision became final on March 28, 2022, when the Appeals Council declined further review. (ECF No. 7, Tr. 2).

Claimant filed a complaint with the U.S. District Court for the Northern District of Ohio to challenge the Commissioner's final decision on June 29, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Claimant asserts the following assignments of error:

> (1) The ALJ erred when she failed to find any of his psychological impairments severe at Step Two of the Sequential Evaluation.
>
> (2) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and found that the effect of the combination of Phillips' symptoms, including pain, allowed him to engage in substantial gainful activity on a full-time and sustained basis.

(ECF No. 10 at 1).

### III. Background

#### A. Relevant Subjective Testimony

The ALJ summarized Claimant's subjective allegations from his hearing and various records:

> The claimant applied for disability benefits alleging that he has been unable to work due to blind or low vision; spinal injury; and trauma leg injury (Ex. 1E). In an Adult Function Report, the claimant alleged that he was unable to work due to difficulty walking distances, standing for long periods, and sitting in the same place for periods of time (Ex. 4E). He stated that he has had several operations after an accident with his leg, causing difficulty standing, walking, and lifting. He stated that he needed physical assistance with personal care, but could prepare meals and do chores with breaks. He was able to shop and spent time with his sister, but did not otherwise socialize. The claimant stated that he could not lift more than 10 pounds, and could walk about 50 feet at a time.
>
> [. . .]

> At the hearing, the claimant testified that he is on Medicaid. He does not currently have a driver's license due to delinquent fees. He is engaged and lives with his fiancée, along with their four shared school-aged children. He lives in a house with stairs, and uses the cane to navigate. His bedroom and the bathroom are downstairs since his accident. He is able to do some household chores, such as dusting, and helps the children with home school. He walks using a cane, he testified, and can stand without the cane. He attested that his ankle and knee are weak, and alleged that he cannot pick up his left foot without manually lifting from behind the knee. The claimant alleged that he could not perform a job sitting down for most of the day because he needs to elevate his leg due to swelling. He wears an AFO brace on his left ankle.

(ECF No. 7, Tr. 27–28).

**B. Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

> There was a visit to pain management in October of 2017, where the claimant alleged lumbar pain radiating down the left leg, which started several months earlier (Ex. 1F/1). It was noted that lumbar spine MRI was previously performed, showing disc herniation at L4-L5 and L5-S1, L5-S1 extrusion with migration, facet arthropathy, and canal and foraminal stenosis (Ex. 1F/1). Examination showed no focal deficits, normal coordination, strength, and tone, aside from 4/5 left knee extensor (Ex. 1F/3). Hoffman's was negative, and left straight-leg raise testing was positive at 40 degrees, with decreased lumbar range of motion (Ex. 1F/3). Lumbar epidural injections were recommended, along with physical therapy (Ex. 1F/3). At a follow up in November, he noted that his first epidural injection had not provided relief (Ex. 1F/7). Examination was unchanged (Ex. 1F/9). After his epidural injection in December, he noted a 90% improvement in his left leg, but continued to have low back discomfort (Ex. 1F/14). In February, he underwent another epidural injection (Ex. 1F/25).

> In December of 2019, the claimant was treated emergently for an accidental gunshot wound to the left lower extremity and scrotum (Ex. 3F/3). He was treated surgically, including a left lower extremity vascular reconstruction and four-compartment fasciotomies of left leg and bilateral orchiectomies, and was hospitalized for follow up surgeries and treatments, including treatment for scrotal infection, gastric ulcer bleeding, persistent vomiting secondary to ileus, and physical and occupational therapy

(Ex. 3F). He underwent one week of inpatient rehabilitation (Ex. 4F/6). As a result of this injury and subsequent orchiectomy, he underwent treatment, consisting of medications, for hypogonadism (Ex. 4F). At his surgical follow up in January of 2020, the claimant noted occasional "electric shock" pain in his left lower extremity and feelings of instability in the left knee (Ex. 4F/6). He was noted to be ambulating with a cane. Examination showed negative anterior and posterior drawer tests at the left knee, scattered scabbing of the left medial leg and left lateral leg (Ex. 4F/6). Sensation was intact, and he was provided with a referral to pain management (Ex. 4F/7).

He established primary care in March of 2020, noting his prior surgeries and need for specialist follow up (Ex. 6F/7). He complained of some left knee swelling, along with mood swings and changes in body mass (Ex. 6F/7). Examination showed scars from prior left leg surgeries, intact sensation in the toes and feet, no edema, and appropriate mood and affect (Ex. 6F/10). He was advised to continue follow up with specialists. At a visit in June, he complained of increased anxiety (Ex. 6F/13). Examination showed appropriate mood and affect, and normal insight and judgment (Ex. 6F/16). It was noted that hormone replacement therapy could not begin until Xarelto was discontinued, and that low testosterone could be contributing to his anxiety (Ex. 6F/17). In July of 2020, the claimant saw his primary care provider, complaining of low back pain after falling the day prior, noting that his knee "gave out" while going down stairs (Ex. 6F/25). Examination showed lumbar tenderness with mildly decreased range of motion, and some weakness in the left knee muscles (Ex. 6F/28).

There was an orthopedic visit the next month, where x-rays of the left knee showed diffuse osteopenia with mild degenerative changes in the medial lateral compartments, and examination showed full passive range of motion with decreased active extension, and normal strength and sensation (Ex. 8F). He noted that he had previously worn an AFO brace for foot drop, but had recovered from this, and that his knee pain was worst when going down stairs (Ex. 11F/1). He was ambulating with a cane, but balance was without issue (Ex. 11F/2). It was noted that his pain was likely due to quadriceps weakening from his prior gunshot wound, and was advised to attend physical therapy for quadriceps strengthening, and provided with an anti-inflammatory (Ex. 8F). He was advised to use an over the counter knee brace and continue mobilization without restrictions (Ex. 11F/2). He started physical therapy in September, and was discharged in November after nine visits, with his last visit on September 30, 2020 (Ex. 10F/8). It was noted that he had made slow progress and was proficient with the home exercise program (Ex.

>10F/8). He was discharged due to lack of recent follow up (Ex. 10F/8). At an October orthopedics follow up, the claimant noted some improvements in his knee pain (Ex. 11F/4). Examination showed intact passive left knee range of motion and limited active range of motion, with less pain at the patella (Ex. 11F/5). He was advised to continue with physical therapy, and to begin wearing his AFO brace again (Ex. 11F/5).

(ECF No. 7, Tr. 28–29).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since October 16, 2017, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3. The claimant has the following severe impairments: status-post gunshot wound with bilateral orchiectomies and left lower extremity vascular reconstruction and four-compartment fasciotomies; lumbar degenerative disc disease; and left knee osteopenia and osteoarthritis (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes, or scaffolds or crawl and can occasionally climb ramps and stairs, balance, crouch, kneel, and stoop. The claimant must be able to use a cane to aid in ambulation. With the left lower extremity, he cannot operate foot controls and can occasionally push and/or pull. He cannot work around vibrations, unprotected heights, or unprotected moving mechanical machinery.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

> 7. The claimant was born on January 11, 1978 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2017, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 7, Tr. 24, 26, 27, 30, 31).

## V. Legal Standards

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r*

6

*of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### VI. Discussion

Claimant raises two issues on appeal. First, he argues the ALJ erred in finding no severe psychological impairments at Step Two. (ECF No. 10 at 8, 10). Second, he claims the ALJ failed

7

to properly apply Social Security Ruling ("SSR") 16-3p to evaluate his subjective allegations, including pain. (ECF No. 10 at 11). The Court will address each issue in turn.

### A. Impairments

Claimant first contends that the ALJ erred in failing to designate any of his psychological conditions, including post-traumatic stress disorder ("PTSD"), as severe impairments at Step Two. (ECF No. 10 at 8).[1] He specifically points to a January 2021 record from Erie County Community Health, arguing it supports "moderate" psychological limitations and claims it was obtained after his file was reviewed for this case. (ECF No. 10 at 10). Finally, Claimant contends the ALJ did not consider "any" psychological impairment when forming the RFC. (ECF No. 10 at 10).

The Commissioner argues that substantial evidence supports the ALJ's determination at Step Two and that the ALJ considered all of Claimant's impairments in crafting the RFC. (ECF No. 12 at 6, 8). Contrary to Claimant, the Commissioner claims that the ALJ reviewed the January 2021 record from Erie County Community Health and that it was unremarkable. (ECF No. 12 at 7–8).

In his reply brief, Claimant again asserts that the January 2021 record demonstrates a need for additional limitations. (ECF No. 13 at 1–2). He also attacks the Commissioner's assertion that the ALJ considered all the impairments in her RFC analysis, arguing this is impossible as the ALJ "did not include any limitations for [Claimant's] psychological impairments." (ECF No 13 at 2).

---

[1] To the extent Claimant attempts to argue that the ALJ failed to classify other psychological conditions as severe impairments, this argument is waived for failure to fully brief the issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

As noted, the ALJ found that Claimant's PTSD was not a severe impairment. (*See* ECF No. 7, Tr. 25). "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Sec'y of HHS.*, 773 F.2d 85, 89 (6th Cir. 1985)). However, the failure to find an impairment severe is harmless error where other impairments are deemed severe. *Maziarz v. Sec'y of HHS.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found that Claimant suffered numerous severe impairments including "status-post gunshot wound with bilateral orchiectomies and left lower extremity vascular reconstruction and four-compartment fasciotomies; lumbar degenerative disc disease; and left knee osteopenia and osteoarthritis." (ECF No. 7, Tr. 24). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (*citing Maziarz*, 837 F.2d at 244). Even assuming the ALJ erred by failing to list PTSD or other psychological conditions as severe impairments, this error is would be harmless as long as she considered non-severe impairments when determining the RFC.

Claimant argues that the ALJ failed to properly consider his PTSD and other psychological impairments when formulating her RFC. (ECF No. 10 at 10). The Court notes that the ALJ did not adopt any mental health restrictions in the RFC. (*See* ECF No. 7, Tr. 27). However, this does not mean the ALJ erred in her analysis.

9

"When formulating an RFC, an ALJ must consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (*citing LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe.")). The ALJ must do so because:

> [w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted); *see id.* ("'[A]n ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions.'") (quoting *Patterson*, 2015 WL 5560121, at *4)

Here, the ALJ concluded that Claimant's PTSD was a non-severe impairment after determining that he had only mild limitations in concentrating, persisting, or maintaining pace, as well as adapting or managing himself. (ECF No. 7, Tr. 25). If the Commissioner rates the degree of limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." § 404.1520a(d). Notably, Claimant's mild limitations do not automatically mandate specific limitations in the RFC. *See, e.g.*, *Little v.*

10

*Comm'r of Soc. Sec.*, No. 2:14-cv-532, 2015 WL 5000253, at *13–14 (S.D. Ohio Aug. 24, 2015) (finding no error where ALJ did not include RFC limitations to address findings of mild mental limitations); *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *5 (S.D. Ohio Aug. 21, 2017) (finding that mild mental impairment does not require inclusion of mental limitations in RFC); *Walker v. Astrue*, No. 3:11-cv-142, 2012 WL 3187862, at *4–5 (S.D. Ohio Aug. 3, 2012) (finding that substantial evidence supported the ALJ's determination that the claimant's mental impairments were mild enough not to warrant specific RFC limitations).

Nonetheless, the ALJ here properly considered Claimant's psychological health when determining her RFC. She noted that Claimant exhibited "appropriate mood and affect" in March and June 2020 examinations. (ECF No. 7, Tr. 29 (citing Exs. 6F/10, 6F/16)). The ALJ also noted that Claimant demonstrated "normal insight and judgment" at the appointment and that the provider noted that low testosterone likely contributed to Claimant's anxiety. (ECF No. 7, Tr. 29). The record also noted, and the ALJ stated in her decision, that hormone replacement therapy to treat these impairments could begin once Claimant discontinued Xarelto. (ECF No. 7, Tr. 29). Claimant's argument that the ALJ did not consider all impairments because she "did not include any [psychological] limitations" fails. (*See* ECF No. 13 at 2). Failure to adopt a limitation in the RFC does not preclude an ALJ from considering the related impairment. Rather, it simply means that—as was the case here—the ALJ considered the impairment but determined that it did not warrant any additional limitations. Furthermore, despite attacking the ALJ's failure to include psychological limitations in the RFC, Claimant suggests no specific limitations the ALJ should have adopted, and his argument for "moderate limitations" is unavailing. (*See* ECF No. 10 at 10). Thus, while the ALJ ultimately included no mental health restrictions in the RFC, the Court finds

11

that the ALJ properly considered these impairments and substantial evidence supports the ALJ's determination.

Claimant's final argument that the January 2021 record from Erie County Community Health was unreviewed is also unavailing. While the state agency consultants offered their opinions in May and November of 2020, and thus did not review the record, the ALJ clearly considered it at Step Two. (*See* ECF No. 7, Tr. 25 (ALJ's review), 74–78 (opinion), 80–88 (opinion)). The ALJ explicitly summarized the record:

> At the assessment in January of 2021, [Claimant] indicated that he had been experiencing anxiety related to his physical difficulty, along with irritability and crying spells (Ex. 12F/15). Examination at that time showed euthymic mood, full affect, clear speech, logical thought processes, and normal insight and judgment (Ex. 12F/19). He was noted to be anxious but cooperative (Ex. 12F/19). Therapy was recommended (Ex. 12F/23).

(ECF No. 7, Tr. 25–26). As the ALJ therefore considered the record in her opinion, she did not miss a "critical body" of evidence warranting remand. *See Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (interpreting the holding in *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008)); *see also Edwards v. Comm'r of Soc. Sec.*, No. 1:17 CV 925, 2018 WL 4206920, at *6 (N.D. Ohio Sept. 4, 2018) (citing *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence developed post-dating those opinions)).

Claimant's numerous references to parts of the Erie County record demonstrating the need for "moderate restrictions" are likewise unavailing. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."); *Wright v.*

*Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The Court notes that many, if not all, of the points Claimant draws from this record are his own subjective complaints to the provider. (*See* ECF No. 7, Tr. 1021 (record); ECF No. 10 at 9 (brief)). This mischaracterizes the provider's objective notes about Claimant's health. Upon review of the record, the provider reported that Claimant had no history of mental health treatment or addiction, was "generally normal," and had an "unremarkable" mental status. (*See* ECF No. 7, Tr. 1022, 1025). This further trivializes Claimant's argument. Finally, the ALJ's failure to reference the record in her RFC analysis section does not warrant remand, as the ALJ is not required to discuss every report in the record. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *Jenkins v. Colvin*, No. 5:15-CV-1165, 2016 WL 825909, at *9 (N.D. Ohio Feb. 11, 2016) ("Although an ALJ is required to consider all of the evidence in the record, [s]he is not required to discuss each item of evidence in her opinion." (citations omitted)), *report and recommendation adopted*, No. 5:15 CV 1165, 2016 WL 815625 (N.D. Ohio Mar. 1, 2016). Either way, she clearly reviewed the record at Step Two, as discussed above, and substantial evidence supports the ALJ's decision not to adopt mental health restrictions in the RFC.

Accordingly, the Court will not disturb the ALJ's decision on this matter. Even if the ALJ erred in finding the psychological impairments non-severe, any error was harmless as the ALJ found other impairments severe and properly considered non-severe impairments in determining the RFC. Substantial evidence supports the ALJ's decision not to include any related limitations in the RFC. Thus, the Court rejects Claimant's first argument.

### B. Subjective Testimony

Claimant finally argues that the ALJ committed harmful error in failing to properly apply

13

SSR 16-3p to evaluate his subjective complaints of pain. (ECF No. 10 at 11). Claimant also makes a cursory reference to other symptoms he alleges the ALJ disregarded including "atrophy, difficulty performing his activities of daily living, impaired balance, impaired sensation, decreased strength, and difficulty ambulating."[2] (*See* ECF No. 10 at 16). He claims the ALJ failed to provide "any" supportable rationale for her decision to partially discredit his allegations and that her decision "failed to contain specific reasons . . . was not supported by the evidence . . . and was not sufficiently specific to make clear . . . the weight the ALJ gave" the allegations. (ECF No. 10 at 16, 17). Claimant also contends that the ALJ failed to build a logical bridge between the evidence and the ultimate denial of benefits. (ECF No. 10 at 18). The Commissioner rejects this argument, claiming that the ALJ reviewed several SSR 16-3p factors and that substantial evidence supports the ALJ's finding. (ECF No. 12 at 9–12).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

---

[2] Claimant also argues that the ALJ disregarded memory loss he experienced as a side effect of his medications. (ECF No. 10 at 16). However, the only record of this symptom is from Claimant's subjective testimony at the administrative hearing. (ECF No. 7, Tr. 61). Under SSR 16-3p, the ALJ must review medical evidence in their review of subjective complaints. However, Claimant's alleged memory loss is not reported in any record other than the administrative hearing transcript. Additionally, Claimant suggests no limitations the ALJ should have adopted to account for memory loss, and no expert suggested any related limitations either. Therefore, substantial evidence supports the ALJ's decision to exclude mental limitations in the RFC, as further discussed above.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, Claimant argues "the ALJ failed to articulate any supportable rationale for her finding that [his] statements . . . were not entirely consistent with the medical evidence." (ECF No. 10 at 16). He also claims the ALJ failed to: (1) list specific reasons for rejecting his allegations, (2) provide support for her credibility finding, and (3) explain her finding in a "sufficiently specific" way. (ECF No. 10 at 17).

The ALJ specified Claimant's subjective complaints:

> In an Adult Function Report, the claimant alleged that he was unable to work due to difficulty walking distances, standing for long periods, and sitting in the same place for periods of time (Ex. 4E). He stated that he has had several operations after an accident with his leg, causing difficulty standing, walking, and lifting. He stated that he needed physical assistance with personal care, but could prepare meals and do chores with breaks. He was able to shop and spent time with his sister, but did not otherwise socialize. The claimant stated that he could not lift more than 10 pounds, and could walk about 50 feet at a time. He had no difficulty following instructions or managing changes in routine, although he stated that he did not deal well with stress (Ex. 4E).
>
> [. . .]
>
> At the hearing, the claimant testified that he is on Medicaid. He does not currently have a driver's license due to delinquent fees. He is engaged and lives with his fiancée, along with their four shared school-aged children. He lives in a house with stairs, and uses the cane to navigate. His bedroom and the bathroom are downstairs since his accident. He is able to do some household chores, such as dusting, and helps the children with home school. He walks using a cane, he testified, and can stand without the cane. He attested that his ankle and knee are weak, and alleged that he cannot pick up his left foot without manually lifting from behind the knee. The claimant alleged that he could not perform a job sitting down for most of the day because he needs to elevate his leg due to swelling. He wears an AFO brace on his left ankle.

(ECF No. 7, Tr. 27–28). After reviewing the medical record, the ALJ found Claimant's subjective complaints "somewhat inconsistent with the other medical evidence of record." (ECF No. 7, Tr. 30). She provided justification for this finding:

> the record as a whole does not demonstrate the existence of limitations of such severity as to have precluded him from performing all work on a regular and continuing basis at any time from the alleged onset date of disability. While imaging studies showed some positive findings, the claimant retains normal strength and sensation, with no noted muscle spasms or reflex changes. The claimant does require use of a cane for ambulation, but there is no evidence that balance was an issue (Ex. 11F/2). The claimant testified that he is unable to lift his left foot without manual support behind the knee—essentially, lifting the foot with his arms to ascend

16

> steps—but the record shows that he reported problems with knee weakness while descending stairs, due to pain and "giving out" in the left knee (Ex. 6F/25 11F/1). He testified that he experiences leg swelling necessitating elevation of the leg, but there is no evidence of edema in the record. While the claimant's fiancée alleged the use of a wheelchair, there is no evidence of wheelchair use or recommendation for the same in the record (Ex. 16E).

(ECF No. 7, Tr. 30).

The ALJ also discussed Claimant's subjective allegations of pain to medical professionals, the location of his pain, and treatment at length in her RFC analysis. (*See* ECF No. 7, Tr. 28–29). She first noted that Claimant visited a pain management specialist in October 2017 and alleged "lumbar pain radiating down the left leg." (ECF No. 7, Tr. 28). She explained that subsequent MRI results showed "normal" coordination, strength, and tone, aside from a 4/5 left knee extensor. (ECF No. 7, Tr. 28). The provider recommended epidural injections and physical therapy to combat the pain, and the ALJ observed that Claimant reported a "90% improvement in his left leg" after a December 2017 injection despite continued "low back discomfort." (ECF No. 7, Tr. 28). The ALJ also noted another epidural injection in February 2018. (ECF No. 7, Tr. 28). In January 2020, the ALJ mentioned that Claimant reported an occasional "electric shock" of pain in his left lower extremity and feelings of instability in his left knee. (ECF No. 7, Tr. 28). The ALJ observed that the provider also referred Claimant to pain management. (ECF No. 7, Tr. 28). Finally, the ALJ noted that Claimant reported improvement in his knee pain during an October 2020 appointment. (ECF No. 7, Tr. 29).

The ALJ also discussed events that exacerbated Claimant's pain, in accordance with SSR 16-3p. She noted that Claimant complained of back pain after a fall in July 2020. (ECF No. 7, Tr. 29). At an orthopedic appointment in August 2020, the ALJ noted that Claimant reported aggravated knee pain when descending stairs and that the provider found that Claimant's weakened quadriceps likely contributed to his pain. (ECF No. 7, Tr. 29).

17

The ALJ reviewed Claimant's daily activities, another SSR 16-3p factor. She noted Claimant reported shopping and spending time with his sister, as well as preparing meals and completing some household chores, such as dusting. (ECF No. 7, Tr. 27). At his administrative hearing, Claimant testified that he assisted his children and stepchild with home schooling and that he needed to elevate his leg throughout the day to combat swelling, which the ALJ noted in her decision. (ECF No. 7, Tr. 28). The ALJ also referenced Claimant's nine physical therapy appointments and noted he was "proficient with the home exercise program." (ECF No. 7, Tr. 29). She stated Claimant was ultimately discharged from physical therapy for failure to follow up. (ECF No. 7, Tr. 29).

In discounting Claimant's subjective allegations of pain and other symptoms, the ALJ provided several reasons to support her finding. First, she noted that imaging studies demonstrated "normal" strength and sensation, with no muscle spasms or reflex changes. (ECF No. 7, Tr. 20). While she admitted that Claimant used a cane, she found no evidence of imbalance in the record. (ECF No. 7, Tr. 30). She also referenced an inconsistency in Claimant's testimony: While Claimant stated he was unable to lift his left foot unaided, which is required to ascend steps, the ALJ noted that Claimant reported knee problems in relation to *descending* steps in the record. (ECF No. 7, Tr. 20 (citing Exs. 6F/25, 11F/1)). Finally, despite Claimant's allegations of leg swelling and a need to elevate his leg, the ALJ noted that there was no evidence of an edema in the record, and Claimant's fiancé's testimony that Claimant used a wheelchair was unsupported by any record or expert opinion. (ECF No. 7, Tr. 30 (citing Ex. 16E)). These reasons are specific enough to comply with SSR 16-3p, and substantial evidence supports the ALJ's explicit reasons for rejecting Claimant's allegations. Thus, the ALJ clearly built a logical bridge between the record and her decision to discredit Claimant's allegations.

On a final note, Claimant does not suggest any additional limitations the ALJ should have adopted to account for his pain. Moreover, the ALJ adopted a limitation that restricted Claimant from operating foot controls with his lower left extremity, a source of his reported pain. (ECF No. 7, Tr. 27). She also adopted an RFC of sedentary work, which exceeds the state agency medical consultants' recommendations of light work. (ECF No. 7, Tr. 27, 29). Thus, despite discrediting the Claimant's subjective complaints, the ALJ still adopted a generous RFC with additional restrictions.

The ALJ's decision satisfies the Court that she considered all of the relevant evidence and that a reasonable mind might accept that evidence as adequate to support her credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

## VII. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: April 4, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).